■ In the Matter of the Claim of GERARD RUSSO, Respondent. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

MEMORANDUM BY THE COURT. Appeal from a decision of the Unemployment Insurance Appeal Board.

This case is quite similar in principle to *Matter of Lauria (Catherwood)* (18 A D 2d 848); but comes somewhat closer to section 593 (subd. 1, par. [b]) of the Labor Law. Claimant is a longshoreman. His wife left him and their three small children to live in Florida. Claimant could not induce her to return; nor could he adequately care for the children while working as a longshoreman. The only way he could obtain adequate care for the children was to go with them to Florida where the wife would take care of them. So he left his job and took the children with him to live with the wife. This may be literally "following his spouse" within the language of the 1960 amendment. But it was more than following the spouse just to go where she was for the sake of convenience and continuity of the marriage. It was, rather, going where the mother of his children was in order that they could get adequate care. This is a difference important enough to be outside the essential sense and meaning of the terms of the statutory disqualification. It is somewhat similar to a case of illness as far as the family and personal necessity pressing on the claimant was concerned. These facts, and the reasons stated are, of course, open to other evaluations and interpretations than the Unemployment Insurance Appeal Board gave them; but there is no demonstrated reason in the record why the board could not have accepted them factually and made a finding that claimant was not disqualified.

The decision should be affirmed, with costs to respondent.

HERLIHY, J. (dissenting). The finding that claimant did not leave his job to follow his wife to another locality but rather that he moved his family to Florida to provide proper care for his children is not sufficient to constitute good cause for his "quit" and establishes a precedent not in accord with the Unemployment Insurance Law as changed after the decision in *Matter of Shaw (Lubin)* (6 A D 2d 354, affd. 5 N Y 2d 1014). Furthermore, in the present case the record does not support the finding of the board.

The board found that "Claimant was unable to make any arrangemnts for the care of his children with the result that it became necessary for him to attempt to persuade his wife to perform her maternal responsibilities and look after the children". Claimant's wife refused to return to his New York residence and so "Since claimant was unable to provide care for the children if he returned with them to New York, he remained in Florida and terminated his New York employment".

The board has determined that the "quit" was due to claimant's children and the change of residence was necessary to provide care for said children.

However, the record does not contain substantial evidence for such a finding. The claimant testified in response to why he quit, "The children, I couldn't leave them all alone". There is no evidence in this record to indicate the age of the children, their school status, the availability of close relatives or baby sitter for the care of the children or other problems that are daily solved in our present complex society without resort to unemployment insurance benefits. To the contrary, the claimant stated that the few days he worked "I had to pay somebody to mind my kids". The record does establish his purpose in going to Florida was "looking for my wife" and that when he found her he remained in Florida because his wife would not "return to New York".

The board, in interpreting the amendment of section 593 of the Labor Law in 1960, enacted for the purpose of disqualifying, regardless of good cause, any claimant who left his employment due to "following his spouse to another locality", interjected the word "solely" into the language of the Legislature in arriving at its determination. The board justified its interpretation by deter-

mining that the legislation was enacted for the sole and specific purpose of overcoming the effects of the decision in *Matter of Shaw* (*Lubin*) (*supra*). In my opinion, the legislation went considerably beyond the relief necessary to overrule the *Shaw* decision. When the Legislature wishes to use the word "solely", for example as a defense in workmen's compensation cases, it does so in appropriate language and the board had no authority to read such a drastic word into the statute in order to reach its present decision.

There is a question of fact in each case as to whether or not the "quit" was due to "following". (See *Matter of Lauria* [*Catherwood*], 18 A D 2d 848.) Accordingly, the board may in a proper case determine that the "following" was merely an incidental aspect of the "quit" and that the "quit" was for good cause as in *Matter of Lauria* (*Catherwood*) (*supra*), in which I concurred.

While it is socially desirable to encourage a family unit to remain together, the Legislature, by its amendment of section 593 in 1960, mandated that unemployment insurance funds were not to be used for such a social purpose. Accordingly, where the cause for the "quit" is for the purpose of residing with the spouse and mother, under circumstances such as here, the allowance of benefits is contrary to the express intent of the Legislature.

I would reverse the decision and award of the board and reinstate the determination of the Industrial Commissioner.

Bergan, P. J., Gibson, Reynolds and Taylor, JJ., concur in Memorandum by the Court; Herlihy, J., dissents, in a separate memorandum, and votes to reverse and reinstate the determination of the Industrial Commissioner.

Decision affirmed, with costs to respondent.